UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-CR-10315-AK |
| GARY LEACH, | |
| Defendant | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The government respectfully submits this memorandum in advance of defendant Gary Leach's sentencing hearing on July 20, 2022. For the reasons set forth below, the arguments to be presented at the sentencing hearing, and based upon consideration of the advisory Federal Sentencing Guidelines range and all of the factors identified in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court impose a sentence of incarceration of 32 months, to be followed by a 36-month term of supervised release during which the defendant's use of electronic devices would be subject to reasonable restrictions and monitoring.[1]

**I.     Background**

On December 16, 2022, Leach pleaded guilty to an Information charging him with two counts of cyberstalking in violation of 18 U.S.C. § 2261A(2)(B) and one count of extortion by interstate threat in violation of 18 U.S.C. § 875(c).

---

[1]The proposed conditions regarding the defendant's limited and monitored use of the internet (proposed special conditions #5-13) reasonably balance the need for him to live and function in a world that is dependent on digital communication on the one hand, with restrictions that address the particular conduct that led Leach to a federal criminal conviction for cyberstalking on the other. By requiring prior approval by the Probation Office of internet-capable devices as well as internet monitoring, and by requiring Leach to use his true name and information online, the Court and the Probation Office should be able to protect the public and rehabilitate Leach following any term of incarceration.

The Presentence Report ("PSR") incorporates an agreed-to statement of facts (attached as Exhibit A) and accurately summarizes Leach's conduct (PSR ¶¶ 7-21).

## II. Advisory Guidelines Sentencing Range

The PSR assigns Leach a Total Offense Level of 19 and a Criminal History Category of I. PSR ¶¶ 47, 52. The resulting Guidelines sentencing range is 30 to 37 months imprisonment (PSR ¶ 86), which is consistent with the parties' calculation in the plea agreement (Dkt. 31). The government seeks a mid-range term of incarceration of 32 months.

## III. Government's Recommendation

Defendant Gary Leach hid behind anonymous Instagram accounts to harass women. While many women encountered Leach online only briefly, Leach stalked and extorted others, and he acted with a staggering degree of calculatedness and cruelty toward at least one of his victims. His conduct, while undertaken entirely over social media, caused significant real-world suffering.

The government respectfully submits that a Guidelines prison sentence is appropriate and necessary to punish this conduct; to protect the public from this defendant; and to deter him and others from weaponizing social media and other digital tools to inflict similar harm.

<u>Defendant's Conduct, History, and Characteristics</u>

Leach's online activity is documented in the Complaint (Dkt. 3), the Information, the PSR, and the attached statement of facts. These documents describe his specific conduct towards Jane Does A and B, as well as his disturbing pattern of using anonymous social media accounts to harass and attempt to victimize other women.

For approximately a year and a half, Leach used threats to keep Jane Doe A in a persistent state of fear and to control her for his own gratification. He first gained leverage over her by promising to pay her for a sexual video performance over Instagram and secretly recording her.

Leach subsequently resurfaced under different anonymous accounts and threatened to send the images of her to her family if she did not comply with his demands for additional sexual interactions and photographs. For much of the next year, Jane Doe A complied.

Leach coerced Jane Doe A into having sexual video calls with him and sending him photographs on demand. The PSR gives just some examples of the things that Leach made Jane Doe A do on these calls or in these photographs, many of which were graphic and degrading. PSR ¶ 9. Leach was explicit and insistent. He demanded that Jane Doe A chat with him and send him photographs while she was at work and when she was driving. He told her that he would be "done" with her if she was "his" and did everything he instructed her to do every day for a week. He called her his "plaything" and ordered her to call him "master." Leach masturbated and sent derogatory and misogynistic messages to Jane Doe A during their interactions.

Leach told Jane Doe A that he would delete the recording that he had made from their first chat. However, during subsequent interactions, Leach made more recordings and gained additional images of Jane Doe A. She pleaded with him to delete these images, which he promised he would do if she performed more for him. In this way, Leach gained additional leverage over Jane Doe A that perpetuated his ability to demand more interactions over Instagram each time he resurfaced under new Instagram aliases, as he did until his arrest in April 2021.

Jane Doe A made her distress known to Leach. She told him that she felt threatened, shocked, and miserable because of his Instagram contact with her. She told him that she feared that he would leak images of her and destroy her life, even if she did everything he told her to do. She indicated that she was at risk of self-harm because of their interactions. At times, she asked Leach why he kept threatening her. Leach's answers were clear and cold-blooded. He told her,

"I'm gonna get everything I want out of you first." He explained, "It's fun and it makes me cum hard." He replied, "To get you to do what you are told, like you are."

Leach cyberstalked other female social media users, including Jane Doe B, an Instagram user in Canada. PSR ¶ 18. As with Jane Doe A, Leach recorded sexual content of Jane Doe B during a video call. He subsequently sent the recording to Jane Doe B's roommate and attempted to contact Jane Doe B from several different anonymous accounts. He told her he had 40 minutes of video of her and indicated that he would send the video to her friends if she did not respond. Jane Doe B began using other Instagram accounts to avoid contact from Leach. PSR ¶ 20.

Leach's conduct toward Jane Doe A also exemplified what he tried but failed to do toward numerous other women on Instagram. Leach used anonymous accounts to offer to pay other female Instagram users for sexual performances over video chat. However, most of these users refused to interact with Leach, in some cases because he refused to pay them up front. PSR ¶ 21. Leach also used anonymous accounts to contact women on Instagram, pretend to know them, and initiate video calls on which he exposed himself masturbating. *Id.*

Harms from Cyberstalking

Cyberstalking is a serious offense that has profound consequences for victims and for the public. It is about power and control, and it disproportionately harms and affects women. *See Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1086 (9th Cir. 2007) (Duffy, J., dissenting) ("The stalker often seeks a sense of power or control over his victim, usually through fear.").[2] "Being stalked, and suffering the fear and threats that characterize the crime" is significantly correlated

---

[2] *See, e.g.*, U.S. Department of Justice, Office on Violence Against Women, 2014 Report to Congress at 2 (January 2017), available at https://www.justice.gov/ovw/page/file/932736/download (last visited July 13, 2022) (hereinafter "DOJ, Report to Congress") (noting that 1 in 7 U.S. women and 1 in 19 U.S. men have experienced stalking in their lifetimes).

with symptoms of post-traumatic stress disorder and psychological distress. DOJ, Report to Congress at 4. Despite the harms caused by stalking to both individual victims and to the public, stalking has historically remained underreported and under-prosecuted. *Id.* at 5-6 (noting that the rates of reporting for stalking crimes are anywhere between 17 and 41 percent). Such underreporting is a result of, among other things, inadequate protections for stalking victims, a belief that the police cannot or will not do anything, fear that victims will not be believed, fear of the perpetrator, and fear that the crime will not be taken seriously. *Id.*

Many of these harms are present with respect to Jane Doe A. By threatening to send sexually explicit and degrading images of her to her own parents and sister, Leach isolated Jane Doe A from those family members and forced her to fear something that to her was unthinkable— that her family should see her exposed, compromised, and humiliated. Because Leach contacted her using myriad anonymous accounts, and because those contacts were so jarring, Jane Doe A came to fear that any unknown account that interacted with her on Instagram was Leach. Because Leach was relentless in pursuing Jane Doe A from these various Instagram aliases for a full year and a half, even after telling her he would stop, Jane Doe A came to believe that the stalking would never stop. And because Jane Doe A today has no way of knowing whether Leach still has access to any images of her, Jane Doe A continues to fear the possibility that he or someone else might access or distribute those images someday.

Leach did not previously know Jane Doe A, and he did not physically stalk Jane Doe A. For her part, Jane Doe A did not know whether her tormenter was someone she knew in real life or a total stranger. However, the fact that Leach committed these crimes from behind a keyboard makes them more serious, not less so, as a member of this Court noted in sentencing another cyberstalking defendant:

> [Counsel] is right to point out that all of these crimes were committed with you sitting behind a computer. That point is well taken. Yet in today's world, that does not diminish the crimes in any way. In fact it ought to bring home to all of us how interconnected we are and what havoc can be wreaked by the improper evil criminal conduct in which you so gleefully engaged.

*United States v. Lin*, 18-CR-10092 (WGY).

<u>Deterrence</u>

The Court should also impose a sentence that will deter Leach and others from this kind of online conduct. Cyber-predators are generally correct to believe that, because they hide behind their computers, the government is less likely to detect and prosecute them than if they commit a hands-on offense. The ability to operate anonymously with relative ease may cause them to believe, mistakenly, that cyberstalking is not a serious crime. Similarly, the ability to engage with so many internet users, and to cause harm without ever actually meeting a victim, may cause cyber-predators to believe—again mistakenly—that cyberstalking is a victimless crime.

When a stalking victim courageously seeks law enforcement's help, and/or when law enforcement is able to trace a network of aliases and anonymous accounts and identify the cyber-stalker, it is important that a Court's sentence adequately deter others who have not been caught. If cyber criminals believe that only mild punishment will follow, there is a significant risk that they will not be deterred from conduct that demonstrably harms others. A Guidelines sentence of incarceration in this case will appropriately signal that these crimes are harmful to an internet- and social media-dependent public and are therefore taken seriously. And in the case of Leach—who caused intense trauma to at least one Instagram user and who used numerous aliases to attempt harmful contact with so many others—a Guidelines sentence will underscore the consequences of falling back into predatory activity when he inevitably returns online following his release from custody.

Proportionality

Moreover, a 32-month sentence is reasonable when compared with sentences given to other defendants convicted for engaging in a similar conduct. *See generally United States v. Cardozo*, 1:18-cr-10251-ADB, 2021 WL 3771818 (1st Cir. 2021) (affirming a 70-month term of incarceration—a "mid-range Guidelines sentence" for the defendant, whose Total Offense Level was also 19 and whose Criminal History Category was VI—for cyberstalking and interstate threats targeting one victim, involving graphic and threatening online posts and direct messages); *United States v. Sayer,* 748 F. 3d 425 (1st Cir. 2014) (affirming a 60-month term of incarceration—14 months over the applicable Guidelines range—for cyberstalking of one victim, including by posting intimate information about the victim online). *See also United States v. Rubens*, 696 Fed. Appx. 941 (11th Cir. 2017) (affirming 120-month term of incarceration for cyberstalking campaign in which defendant photoshopped sexual acts of his victims and posted them online); *United States v. Conlan*, 786 F.3d 380 (5th Cir. 2015) (cyberstalking of one victim resulting in a 96-month term of incarceration); *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2013) (cyberstalking of one victim resulting in a 96-month term of incarceration). While no two cyberstalking cases are alike—with respect to the nature of the harassment or threats, the relationship between the stalker and victim(s), or the resulting harm—these cases demonstrate a recognition among courts of the seriousness of cyberstalking and the need for meaningful sentences in response.

Conclusion

Gary Leach targeted women he did not know online and tormented Jane Doe A for a year and a half. A mid-range Guidelines sentence is appropriate and not greater than necessary, based on the disturbing nature of Leach's conduct; the number of women he attempted to victimize; the impact on Jane Doe A; and the importance of deterring others who are tempted to anonymously inflict cruelty on others through social media for their own gratification.

                                 Respectfully submitted,

                                 RACHAEL S. ROLLINS
                                 United States Attorney

By:     /s/ *David M. Holcomb*
           DAVID M. HOLCOMB
           Assistant United States Attorney
           John Joseph Moakley United States Courthouse
           1 Courthouse Way, Suite 9200
           Boston, MA 02210
           (617) 748-3000

Dated: July 13, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                          /s/ *David M. Holcomb*
                          David M. Holcomb
                          Assistant United States Attorney

Date: July 13, 2022